No. 18-35557

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ROBERT E. CARUSO,

STEPHEN KERR EUGSTER, *sub nom.*

Appellant,

vs

WASHINGTON STATE BAR ASSOCIATION ET AL.,

Appellees.

_____

On Appeal from the United States District Court
for the Western District of Washington
No. 2:17-cv-00003-RSM
Hon. Ricardo S. Martinez

---

OPENING BRIEF OF APPELLANT
STEPHEN KERR EUGSTER

---

Stephen Kerr Eugster, Pro se
EUGSTER LAW OFFICE PSC
2418 West Pacific Avenue
Spokane, Washington 99201
(509) 624-5566
eugster@eugsterlaw.com

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

THE SITUATION TODAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

JUSTICE OR JUDGMENT OF POWER . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.     Argumentum Ad Hominem. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.     Res Judicata and Claim Preclusion . . . . . . . . . . . . . . . . . . . . . .15

II.    THE PREFILING ORDER MUST BE OVERTURNED . . . . . . . . . . . 19

      A.     Legal Standards About Pre-filing Orders. . . . . . . . . . . . . . . . 19

            1.     Abuse of Discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            2.     Adequate Record for Review. . . . . . . . . . . . . . . . . . . . . . 20

            3.     Substantive Findings of Frivolousness. . . . . . . . . . . . . . 21

            4.     Breadth of the Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

            5.     Conflict of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

            6.     Constitutional Rights, Implications. . . . . . . . . . . . . . . . 24

       *7.      Substantive Findings*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   **B.      Of the "Eleven Cases," None are Frivolous or Harassing.** . . . . 27

       *1.      The Standards Used by Judge Martinez.*. . . . . . . . . . . . . . . . 27

       *2.      What Judge Martinez Say about the Eleven Cases and What*

             *the Bar and* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**III.    EUGSTER'S CONSTITUTIONAL RIGHTS** . . . . . . . . . . . . . . . . . . . . 41

**IV.    CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**V.    STATEMENT 0F RELATED CASES** . . . . . . . . . . . . . . . . . . . . . . . . . 42

**VI.    REQUEST FOR ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

## Table of Cases

*Abatie v. Alta Health Life Ins. Co.*,
   458 F.3d 955, 958 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Abood v. Detroit Board of Education,*
   *supra*, at 234-235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*BE & K Const. Co. v. NLRB,*
   536 U.S. 516, 524122 S. Ct. 2390,
   153 L. Ed. 2d 499 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Brown v. Blue Cross Blue Shield of Alabama, Inc.*,
   898 F.2d 1556, 1561 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Christopher v. Harbury*,
   536 U.S. 403415 n. 12,122 S. Ct. 2179,
   153 L. Ed. 2d 413 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cromer v. Kraft Foods N. Am., Inc.,*
   390 F.3d 812, 818 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*De Long v. Hennessey*,
   912 F.2d 1144, 1146 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 19, 25-27

*Delew v. Wagner,*
   143 F.3d 1219, 1222 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Does 1-5 v. Chandler*,
   83 F.3d 1150, 1152 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Horphag Research Ltd. v. Pellegrini,*
   337 F.3d 1036, 1042 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Disciplinary Proceeding Against Eugster*,
166 Wash. 2d 293, 298 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Janus v. American Federation of State, County,*
*and Municipal Employees, Council 31, No. 16-1466*,
585 U.S. ___ (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867, 879 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lathrop v. Donahue*,
367 U.S. 820 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 18, 19, 29

*Martin-Trigona*,
737 F.2d at 1270-74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miller v. Metropolitan Life Ins*. Co.,
925 F.2d 979, 984 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Molski v. Evergreen Dynasty Corp.*,
500 F.3d 1047, 1057 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Molski,*
500 F.3d at 1056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Moy*, *v. U.S.*,
906 F.2d 467, 470 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pensco Tr. Co. v. Delfierro*,
CASE NO. C16-1926 RSM, at * (W.D. Wash. Jun. 21, 2017) . . . . . . . . . . 15

*Ringgold-Lockhart v. Cnty. of L.A.*,
761 F.3d 1057, 1062 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 19, 24, 25

*Roberts v. United States Jaycees*,
468 U.S. 609, 623 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Ruderer v. United States*,
462 F.2d 897, 899 (8th Cir. 1969), *appeal dismissed
and cert. denied*, 409 U.S. 1031, 93 S.Ct. 540,
34 L.Ed.2d 482 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Safir v. U.S. Lines, Inc.*,
792 F.2d 19, 24 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sires*,
748 F.2d at 51. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Finley*,
301 F.3d 1000, 1007 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Constitutional Provisions

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Statutes

RCW 4.48.040 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

RCW Chapter 2.48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Rules and Regulations

General Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

General Rule 12.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7-9

Local Rule 34(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 60(b) - (3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rule 60(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Other Authorities**

Dr. Michael C. Labossiere (2002-2010) "42 Fallacies:
Ad Hominem" (PDF). p. 2. Retrieved 2018-10-17 . . . . . . . . . . . . . . . . . . . . . . 15

https://www.wsba.org/docs/default-source/about-wsba/
governance/governance-task-force/wsba-governance-task
-force-report-and-recommendations---final.pdf?sfvrsn
=23163ef1_8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## JURISDICTIONAL STATEMENT

This case is an appeal of the district court's dismissal of the action and final judgment of the United States District Court for the Eastern District of Washington. The district court had subject matter jurisdiction over the civil action based on 28 U.S.C. § 1331. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. Final judgment was entered by the district court on May 11, 2018.

Appellant filed a Notice of Appeal on May 11, 2018. The appeal is from a judgment of the district court that disposed of all parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the court abused its discretion in ordering:

" 1) Steven [sic] K. Eugster is enjoined from filing any of the following without prior leave of this Court:

(a) any lawsuit in federal court against the WSBA, its employees, or agents;

(b) any lawsuit in a Washington State court bringing a facial challenge against Washington State's attorney bar system; and

(c) any claims in federal or state court arising from one of Mr. Eugster's prior federal suits challenging Washington State's bar system. This injunction applies to Mr. Eugster as a party and in his role as an attorney."

"2) In the future, if Mr. Eugster wishes to obtain leave of this Court to file such a lawsuit, he must first file a separate motion under Case No. 2:18-mc-66 RSM [Hon. Ricardo S. Martinez] stating clearly what distinguishes the

1

contemplated suit from all of his prior suits. He must attach a proposed copy of the complaint. He must further present a short description of the legal basis for each claim to be pursued, with brief citation to legal authorities in support. Mr. Eugster may then only file his proposed complaint in federal or state court if he obtains leave of this Court to do so." ER 228.

## STATEMENT OF THE CASE

One might wonder how this state of affairs came about?  Simply put, it came about because the WSBA Executive Director and certain members of the WSBA Board of Governors concocted a plan to create a fiction, an illusion concerning the power of the Washington Supreme Court over the WSBA and its members.

> [The] Supreme Court has made it clear, based on separation of powers, that it holds ultimate authority over the regulation of the Bar, the practice of law, and the WSBA itself- notwithstanding conflicting statutes. *State ex rel. Schwab v. Wash. State Bar Ass'n*, 80 Wash. 2d 266, 272, 493 P.2d 1237 (1972); *Graham v. State Bar Association*, 86 Wash. 2d 624 (1976); WSBA v. State of Washington, 125 Wash. 2d 901 (1995).
>
> *Report and Recommendations by Washington State Bar Association Governance Task Force* dated June 24, 2014, at 23.[1]

These cases do not support the rule expressed - "that [the Supreme Court] holds ultimate authority over the regulation of the Bar, the practice of law, and the

---

[1]https://www.wsba.org/docs/default-source/about-wsba/governance/governance-task-force/wsba-governance-task-force-report-and-recommendations---final.pdf?sfvrsn=23163ef1_8

WSBA itself- notwithstanding conflicting statutes."  Nevertheless, the court and

the Washington State Bar Association believe "[t]hat the Court has inherent and

plenary authority over the WSBA."  One cannot help but be concerned about the

future of our judiciary – it does not understand the extent of power they exercise it.

The will expand its power, inevitably in a way which enhances the court's power.

Among other things, it causes the court to look into the political well, and seek

even more power, the power to influence a judge.

On September 1, 2017, the court adopted General Rule 12  Regulation of

The Practice of Law which provides:

> The Washington Supreme Court has inherent and plenary authority to
> regulate the practice of law in Washington. The legal profession
> serves clients, courts, and the public, and has special responsibilities
> for the quality of justice administered in our legal system. The Court
> ensures the integrity of the legal profession and protects the public by
> adopting rules for the regulation of the practice of law and actively
> supervising persons and entities acting under the Supreme Court's
> authority.

That same day, September 1, 2017, the court used the supposed "inherent

and plenary authority to regulate the practice of law in Washington" and thus

exercised complete control of the Washington State Bar Association; The court

adopted General Rule 12.2, the title to which is "Washington State Bar

Association: Purposes, Authorized Activities, and Prohibited Activities."

Appellant Eugster was retained by Robert Caruso and Sandra Ferguson to bring an action on their behalf against the Washington State Bar Association. The action, *Caruso v. WSBA at al.* The complaint, filed on January 3, 2017, asserted that the WSBA became on January 1, 2017, an association of lawyers, limited practice officers, and limited license legal technicians. Caruso and Ferguson, asserted that the Bar Association violated theirs fundamental constitutional rights and that the infringements upon those rights could not be sustained under strict scrutiny. Caruso and Ferguson also asserted that the WSBA Washington discipline system was inoperative because the system was no longer in the hands of an integrated Bar Association, and instead, was not part of the WSBA Association of legal professionals and could not be operated by the WSBA Association of legal professionals. Caruso and Ferguson also asserted that the discipline system which the WSBA Association of legal professionals was pursuing violated their fundamental rights to procedural due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

Caruso and Ferguson filed a motion for summary judgment in the case and also sought a preliminary injunction concerning the operation of the discipline system.

In response to the two motions, the WSBA filed its Motion to Dismiss and

Opposition to Plaintiffs' Motions for Summary Judgment and Preliminary Injunction.  The trial judge, Hon. Ricardo S. Martinez, dismissed the case.  Also, Judge Martinez, by a motion by the WSBA and WSBA Lawyers against Eugster pro se, ordered that Eugster personally be ordered to pay the WSBA over $26,000 to the WSBA.  (As you will see below, he is a great defender of himself and an advocate of some strange ways of thinking.) ER 562.

Eugster, on behalf of Caruso and Ferguson, appealed the decision to the Ninth Circuit Court of Appeals, No. 35410.  ER 570.  Sandra Ferguson withdrew from the appeal so to be able to bring a motion to amend her complaint.

Eugster pro se filed an appeal of the order against him to the 9th Circuit, 35529.

A three-judge panel of the Ninth Circuit affirmed the decisions of Judge Martinez. Eugster on behalf of Caruso and himself filed  Petitions for Rehearing En Banc.  ER Caruso ER 658 and ER 678 for Eugster.    Within 14 days of the mandate, the attorneys for the Bar Association asserted some of $46,000 in claims in the Caruso case No. 35410, and also made them in th in the case of Eugster, No. 35529.

**THE SITUATION TODAY**

The Washington State Bar Association has obtained the prefiling order which is the topic of this litigation to stop appellant Stephen Kerr Eugster from getting the case to a fair and impartial judicial hearing. The basic facts are these: The Washington State Bar Association has changed dramatically. Since 1933 it has been one of the many integrated bar association's which were so popular beginning in the progressive era in 1914 on. Starting about 2011, the WSBA pursued ideas pertaining to what is called "access to justice." In 2012, Bar Association members were successful in gaining passage of a referendum which rolled back the bar dues that the WSBA Board of Governors had adopted for the coming years. The referendum was successful. The WSBA felt threatened and determined it was time to look into changing the governance of the organization. A governance task force was created. The governance task force issued its final report and recommendations in June 2014 and the report can be found at the WSBA website.  The members of the task force addressed its concern this way. They supposedly analyzed three Washington cases dealing with the WSBA. They deduced from these cases that the Washington State Supreme Court had inherent and preliminary authority over the Bar Association and its members. The recommendations in the report were to have the Washington Supreme Court adopt court rules which superseded the provisions of the State Bar Act contained in

6

RCW Chapter 2.48, the State Bar Act. When it came time for the board of governors to address the recommendations, the decision was made which basically allowed the court to pass court rules which superseded the provisions of the State Bar Act. Discussion took place, however, about the retention of the part of the act that established the WSBA as an entity, an agency of the state of Washington. Instead, the board of governors simply adopted the task force report and proceeded to amend the bylaws of the WSBA. In the discussions concerning whether or not to supersede the first section of the Bar Act, the section which created the WSBA, the conclusion was that all the court had to do was to supersede all the other provisions of the Bar Act through the adoption of bylaws by the WSBA and shortly thereafter the adoption of a court rule by the court governing the WSBA. This rule is General Rule 12.2.

The bylaws and court rule changed the character of the WSBA. No longer was the WSBA an association of lawyers, no longer was it a standard integrated Bar Association like 30 or so other Bar Associations throughout the United States. See the spreadsheets concerning integrated bar association in the United States and its territories and protected areas. The Bar Association, keeping the name Washington State Bar Association, became an integrated association of lawyers, limited practice officers, APR 12, and limited license legal technicians. APR 28.

Under the first amendment jurisprudence of the United States Supreme Court's decision in *Lathrop v. Donahue*, 1961 significantly changed. At present, the court uses a strict scrutiny test in such situations where there are infringements upon the fundamental rights of Bar Association members. Infringements such as compelled membership in the Association and the compulsion to pay annual dues to the Association.

The case before the court in Caruso v. WSBA was brought after the Bar Association bylaws were amended and the Supreme Court adopted General Rule 12.2. Clearly, the members of the Bar Association had constitutional rights which they had a right to pursue. Appellant Eugster is pursuing them in this case.

The trial judge ruled against him. The judge said that the Bar Association is not a new or separate entity; it is the same entity that it was when the case which Eugster brought in 2015 wherein he tried to have the court overturn *Lathrop v. Donahue* and which he lost when the Ninth Circuit said on appeal that since the holding in *Lathrop v. Donohue* was rendered by a plurality of the Supreme Court, it could not be overturned except by the United States Supreme Court. Eugster timely filed a petition for writ of certiorari with the Supreme Court in May 2017. In June, at the last court conference of that term did not grant the petition.

In the meantime, Eugster had commenced this action. It was an action contesting the constitutionality of the Bar Association under the court rule GR 12.2. The case is different from the Caruso case in that the individual justices of the Supreme Court, acting in their official capacity, are parties to the action. The justices had to be named as parties in the case because the justices were necessary parties under Rule 19. The District Court in the Eastern District of Washington dismissed Eugster's complaint saying that the matter had already been decided under rules of res judicata and claim preclusion.

The judge was able to say this because Judge Martinez in the Caruso case had treated the Bar Association as an entity that had not changed; he accepted what can best be called a ruse by the lawyers for the WSBA. The WSBA was not a new entity. Obviously, it was not. No matter what the judge thought did not change the fact that the Bar Association was what the complaint said it was. ER 520. An association, not of lawyers, but now of lawyers, and limited practice officers, and limited license legal technicians.

The Eugster case just described, has been appealed. His Opening Brief was filed on September 28, 2018. Appendix 164. It makes two (Monesimple points. First, Eugster says that the Bar Association at the present time is in violation of the

holding of the United States Supreme Court in *Janus v. American Federation of State, County, and Municipal Employees, Council 31, No. 16-1466*, 585 U.S. ___ (2018). In that case, the Supreme Court held a worker could not be prevented from engaging in his chosen profession if he did not contribute money to the state which employed him. (Money for work, controlled by the state.) Second, is the use of strict scrutiny to test whether a lawyer can be compelled to be a member of an organization with which he disagrees.

Eugster's opening brief has been filed with the Ninth Circuit. Addendum 164. The Bar Association's answering brief is due the end of the month of October. Hopefully, Eugster's case will resolve these issues.

At the present time, there are two cases which rely on the decision in *Janus v. AFSCME* to cause the Supreme Court to say that the decision in *Janus* applies to the situations that lawyers are subject to. One case is a case recently filed in District Court in Oregon. Another case is a case filed in North Dakota which has resulted in a petition for writ of certiorari to the United States Supreme Court. The case was on the court's docket at the last conference in June this year but was carried over to the court's long conference at the start of the new Supreme Court term on September 24, 2018. It was not acted upon at that conference and the case

was re-listed for October 5, 2018. The case was relisted again and is now to be considered on in a future conference.

Eugster feels that this background is important for the court to be aware of. The court should not affirm Judge Martinez pre-filing order. The court should let things be. Perhaps the Ninth Circuit will agree with Eugster's positions in this case.

## SUMMARY OF ARGUMENT

The pre-filing order entered herein is built upon a travesty of falsehood and deceit by the WSBA lawyers. The bar's aggressive nature has two principal parts. First, that Eugster is an evil person who is trying to use the court for his selfish purposes; and second, that the law of res judicata and issue preclusion preclude Eugster's challenges.

First, Eugster will assert and conclude that the pre-filing order was issued by Judge Martinez in clear and convincing abuse of discretion under the standards for pre-filing motions.

Second, Eugster will address the fact that Judge Martinez is disqualified to act and has been disqualified to act in these proceedings under the standards applicable to mandatory disqualification under 28 U.S.C. § 455(a) and (b).

Third, Eugster will show that the pre-filing order issued by Judge Martinez was, and is, a continued violation of fraud of the court under the standards applicable to such fraud.

Fourth, Eugster will show that the pre-filing order is a violation of his fundamental rights under the Constitution of the United States which cannot be justified by strict scrutiny under present United States Supreme Court constitutional principles.

## ARGUMENT

> The continued existence of a free and democratic society depends upon recognition of the concept that Justice is based upon the rule of law grounded in respect for the dignity of the individual and the capacity through Reason for enlightened self-government. Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection. Without it, individual rights become subject to unrestrained power, respect for law is destroyed, and rational self-government is impossible.
>
> > Fundamental Principles of Professional Conduct, WASHINGTON RULES OF PROFESSIONAL CONDUCT

## JUSTICE OR JUDGMENT OF POWER

The Washington State Bar Association perceives Stephen Kerr Eugster as one who is the enemy of the Bar Association.  Eugster's efforts being addressed to

cases against the Bar Association are said to be frivolous and harassing, making Eugster a vexatious litigant in the association's eyes. In this matter, the Bar Association sought and secured from the trial judge a pre-filing order against Eugster. Because of the order, Eugster has to get the approval of the trial judge if ever in the future he wants to file an action. The order is broad:

> Eugster is enjoined from filing "any of the following" without prior leave of this Court, the trial judge. Eugster without permission cannot (a) file "any lawsuit in federal court against the WSBA, its employees, or agents, (b) any lawsuit in a Washington State court bringing a facial challenge against Washington State's attorney bar system; and "any claims in federal or state court arising from one of Mr. Eugster's prior federal suits challenging Washington State's bar system. The "injunction" applies to "Mr. Eugster as a party and in his role as an attorney."

ECF # 68.

Eugster wishes to obtain leave of this Court to file such a lawsuit; he must first file a "separate motion under Case No. 2:18-mc-66 RSM [Hon. Ricardo S. Martinez] stating clearly what distinguishes the contemplated suit from all of his prior suits. He must attach a proposed copy of the complaint. He must further present a short description of the legal basis for each claim to be pursued, with brief citation to legal authorities in support. Eugster may then only file his proposed complaint in federal or state court if he obtains leave of this Court to do so.

Eugster told Judge Martinez when he asked Judge Martinez to recuse himself that he intended to bring an action seeking to have a judgment rendered by the judge overturned. A rough draft of such a complaint was a part of the request.

The judgment was appealed to the 9th Circuit. A Circuit panel of three affirmed the trial court. As to the fraud on the court addressed in both appeals, one by his client and one per se, the court as to Caruso said "[w]e reject as without merit Caruso's contentions of fraud upon the district court." Doc 62-2, 44-1, App. 617. As to Eugster, the court said "[w]e reject as without merit and unsupported by the record Eugster's contentions that he is entitled to sanction, the defendants committed fraud on the court and that the District Court was required to recuse or disqualify itself." App. 620 Doc. 61-2 17-35529 Doc. 22-2.

Despite the appeal of the case, and the affirmance of the 9th Circuit, Eugster and his client Caruso have rights under Rule 60(b) - (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; or (4) the judgment is void); and Rule 60(d)(3) set aside a judgment for fraud on the court. It would seem unlikely Judge Martinez would give Caruso or Eugster permission to bring such action.

**A.     Argumentum Ad Hominem.**

The relationship between the Eugster and the WSBA began when Eugster

14

commenced an action in District Court in which he sought to have the court

overrule *Lathrop v. Donohue*, 367 U.S. 820 (1961).

From that time the WSBA lawyers have pursued an attack of Eugster's

character and have sought to prejudice the court against him. Their approach has

been argumentum ad hominem -- "a fallacious argumentative strategy whereby

genuine discussion of the topic at hand is avoided by instead attacking the

character, motive, or other attribute of the person making the argument, or persons

associated with the argument, rather than attacking the substance of the argument

itself." Dr. Michael C. Labossiere (2002-2010) "42 Fallacies: Ad Hominem"

(PDF). p. 2. Retrieved 2018-10-17.

**B.      Res Judicata and Claim Preclusion**.

Assured that the trial judge was inspired by their efforts at impugning the

character of Eugster, the WSBA lawyers contrived another fallacy of logic. This

fallacy of logic had a truly sinister aspect to it. It essentially included a fraud.

About that time, Judge Martinez was working on another case which dealt

with the application of the doctrine of res judicata and claim preclusion.

Here is what Judge Martinez said in *Pensco Tr. Co. v. Delfierro*, CASE NO.

C16-1926 RSM, at * (W.D. Wash. Jun. 21, 2017):

The doctrine of res judicata "bar(s) all grounds for recovery which

could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (internal quotations omitted); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.") (internal quotations omitted). The doctrine serves the important public policy of providing "an end to litigation" and ensures that "matters once tried shall be considered forever settled as between the parties." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-02, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981).

Next, Judge Martinez said:

To determine whether a subsequent lawsuit involves the same causes of action as a prior suit, the Court must consider the following four factors: (1) whether rights established by the prior judgment would be impaired by prosecution of the second action, (2) whether both actions present substantially the same evidence, (3) whether both actions involve infringement of the same right, and (4) whether both actions arise out of the same transactional nucleus of facts. *Costantini*, 681 F.2d at 1201-02. Of these four factors, the last is most important. *Id.* at 1202; *see also Owens*, 244 F.3d at 714 ("The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts.") (internal quotations omitted). *Pensco Tr. Co. v. Delfierro*, referring to a prior case, said: (the Court must consider the following four factors: (1) whether rights established by the prior judgment would be impaired by prosecution of the second action, (2) whether both actions present substantially the same evidence, (3) whether both actions involve infringement of the same right, and (4) whether both actions arise out of the same transactional nucleus of facts. *Costantini*, 681 F.2d at 1201-02. "Of these four factors, the last is most important. *Id.* at 1202; *see also Owens*, 244 F.3d at 714 ("The central criterion in determining whether there is an identity of claims between the first

16

and second adjudications is whether the two suits arise out of the same transactional nucleus of facts.") (internal quotations omitted).")

In the *Owens* case added clarity to this important aspect of res judicata.  In *Owens,* the court said:

(" "The central criterion in determining whether there is an identity of claims between the first and second adjudications is `whether the two suits arise out of the same transactional nucleus of facts.'" *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citation omitted). The district court concluded that the allegations in both complaints "clearly arise from the same transactional nucleus of facts."").

The lawyers for the WSBA were well aware of the requirement of paragraph four to the case.  They were well aware the Caruso case was not an integrated bar association case.  They knew the WSBA after January 1, 2017 was no longer a Washington State Bar Association of lawyers.  They knew the WSBA, though still using the name WSBA, was an association of lawyers, limited practice officers, and limited license legal technicians.  The nucleus of facts in Caruso was different than the nucleus of facts in Caruso.

Why does Eugster say he knew they knew?  The implications of the change and the timing of the lawsuit Caruso brought was after January 1, 2017; were known and discussed with the WSBA lawyers.  On February 24, 2017, Eugster had a telephone conference with Paul Lawrence, Jessica Skelton, and Taki

17

Flevaris. During that time they listened to Eugster explaining by the Caruso case was different from all of the others. He pointed out that the Caruso case addressed the facts of the Bar Association after January 1, 2017, having become a Bar Association of not only lawyers, but also limited practice officers and limited license legal technicians. ER 888 paragraphs 17 - 19.

The WSBA lawyers listening made it clear to Eugster that if he proceeded with that action, the WSBA was against him. The Bar Association next filed its Motion to Dismiss and Opposition to Plaintiff's Motions for Summary Judgment and Preliminary Injunction. In the motion, the WSBA lawyers for the Bar Association asserted that the Bar Association was not a separate entity as they said Eugster had claimed. It was still the Bar Association. They intended that Judge Martinez would be able to use Eugster III, the case where Eugster sought to overturn the holding in *Lathrop v. Donahue* which held in a plurality decision that lawyers could be forced to be members of an integrated Bar Association. Thus, to make it possible for Judge Martinez to take that position, the lawyers created a strawman. The strawman was Judge Martinez with the conclusion that the Bar Association referred to as WSBA 2017 was not a separate entity.

Of course, Eugster's complaint made it abundantly clear that he was looking at the WSBA 2017 as the WSBA after the amendments to the bylaws and the fact

the amendments included an amendment making the membership of the WSBA

one of legal professionals or service providers consisting of lawyers, limited

practice officers, and limited license legal technicians.  Judge Martinez jumped on

the ruse and used it as his own.

This undertaking by Judge Martinez was part of an intentional effort to lie

to the court, or deceive the court, in the thinking that the WSBA after 2017 was no

different than the integrated Bar Association considered in *Lathrop v. Donohue*;

he could decide that it applied as res judicata in the case.  The case is not to be

used to say that Eugster's case is also subject to res judicata. The nucleus of fact is

different.

## II.   THE PREFILING ORDER MUST BE OVERTURNED

### A.   Legal Standards About Pre-filing Orders.

#### 1.   *Abuse of Discretion.*

The court reviews a pre-filing order entered against a vexatious litigant for

abuse of discretion.  *De Long v. Hennessey*, 912 F.2d 1144, 1146 (9th Cir. 1990);

*Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014)("We

review the district court's compliance with these procedural and substantive

standards for an abuse of discretion. *Molski,* 500 F.3d at 1056."). "A district court

abuses its discretion when it bases its decision on an incorrect view of the law or a

clearly erroneous finding of fact. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); *Does 1-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996)." *Id.*, 500 F.3d at 1057.

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (stating that, under abuse of discretion standard, the appellate court "must consider whether the district court's decision was based on a consideration of the relevant factors").

The court in *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003) said:

> An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found. . . . Under the abuse of discretion standard, a reviewing court cannot reverse a decision of the district court unless the reviewing court has a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." (internal quotation marks omitted)).

### 2. *Adequate Record for Review*.

An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed. *See Martin-Trigona*, 737 F.2d at 1270-74. At the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive. *See,*

20

*e.g. Wood*, 705 F.2d 1515, 1523, 1526 (35 related complaints filed); *Oliver*, 682

F.2d at 444 (over 50 frivolous cases filed); *In re Green,* 669 F.2d 779, 781 (D.C.

Cir. 1981) (per curiam) (over 600 complaints filed).

### 3. *Substantive Findings of Frivolousness.*

To make such a finding of frivolousness, the district court must look at

"both the number and content of the filings as indicia" of the frivolousness of the

litigant's claims. *Powell, 851 F.2d at 431. See also Moy, 906 F.2d at 470* (A pre-

filing "injunction cannot issue merely upon a showing of litigiousness.").

An alternative to the finding of frivolousness is the finding that claims show

a pattern of harassment. *See Powell*, 851 F.2d at 431. The district judge made no

finding that De Long's claims were harassing. Absent findings of harassment or

frivolousness, we cannot uphold the district court's order.

The first and second of these requirements are procedural, while the "latter

two factors ... are substantive considerations ... [that] help the district court define

who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the

litigant's abusive behavior while not unduly infringing the litigant's right to access

the courts." *Molski*, 500 F.3d at 1058. In "applying the two substantive factors,"

we have held that a separate set of considerations employed by the Second Circuit

Court of Appeals "provides a helpful framework." *Id.* The Second Circuit

considers the following five substantive factors to determine "whether a party is a vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate": (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Id.* (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). The final consideration—whether other remedies "would be adequate to protect the courts and other parties" is particularly important. *See Cromer v. Kraft Foods N. Am., Inc.,* 390 F.3d 812, 818 (4th Cir. 2004).

### 4. *Breadth of the Order.*

Another problem with the vexatious litigant order is its breadth. The order must have boundaries. *Compare Moy*, 906 F.2d at 470. If the court is to permit pre-filing restrictive orders, these orders must be narrowly tailored to closely fit the specific vice encountered. *See Wood*, 705 F.2d at 1523-26 (plaintiff restricted from filing new actions paralleling the issues being litigated in a case and

preventing him from relitigating issues decided in two cases); *Ruderer v. United States*, 462 F.2d 897, 899 (8th Cir. 1969) (plaintiff prevented from relitigating issues pertaining to his discharge or issues which he raised in previous cases specifically named), *appeal dismissed and cert. denied*, 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972).

Narrowly tailored orders are needed "to prevent infringement on the litigatior's right of access to the courts." *Sires*, 748 F.2d at 51; *see also Wood*, 705 F.2d at 1525 (if restrictive orders are "used too freely or couched in overly broad terms, injunctions against future litigation may block free access to the courts").

### 5. *Conflict of Interest.*

*Abatie v. Alta Health Life Ins. Co.*, 458 F.3d 955, 958 (9th Cir. 2006) ("abuse of discretion review, tempered by skepticism commensurate with the plan administrator's conflict of interest, applies here.")

*Abatie v. Alta Health Life Ins. Co.*, 458 F.3d 955, 958 (9th Cir. 2006) ("Lesser irregularities, like the one in this case, do not remove the decision from abuse of discretion review, but rather should be factored into the calculus of whether the administrator abused its discretion."). *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) ("The eleventh circuit, in *Brown v. Blue Cross Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990), has

pointed out the difficulty of integrating factors such as self-interest into the legal standard for review where an insurance company serves as the decision making fiduciary for benefits that are paid out of the insurance company's assets rather than out of the assets of the employee benefit plan. Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profitmaking role as a business, and the conflict of interest is substantial. *Id.* at 1561-62. The court in *Brown* held that the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest. *Id.* at 1563.").

### 6. *Constitutional Rights, Implications.*

The restriction of a person's right to "access to the courts" is a fundamental constitutional right which can only be infringed if it passes strict constitutional scrutiny. *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1061-62 (9th Cir. 2014). "Restricting access to the courts is, however, a serious matter. "[T]he right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner,* 143 F.3d 1219, 1222 (9th Cir. 1998).

The First Amendment "right of the people . . . to petition the Government for a redress of grievances," which secures the right to access the courts, has been

termed "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Const. Co. v. NLRB,* 536 U.S. 516, 524122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002) (internal quotation marks omitted, alteration in original); *see also Christopher v. Harbury*, 536 U.S. 403415 n. 12,122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) (noting that the Supreme Court has located the court access right in the Privileges and Immunities clause, the First Amendment petition clause, the Fifth Amendment due process clause, and the Fourteenth Amendment equal protection clause).")                    `

*Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062 (9th Cir. 2014) ("Profligate use of pre-filing orders could infringe this important right, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (per curiam), as the pre-clearance requirement imposes a substantial burden on the free-access guarantee.

Out of regard for the constitutional underpinnings of the right to court access, "pre-filing orders should rarely be filed," and only if courts comply with certain procedural and substantive requirements. *De Long,* 912 F.2d at 1147. *Ringgold-Lockhart v. Cnty. of L.A.*, *supra*, 761 F.3d at 1062.)

("Restricting access to the courts is, however, a serious matter. "[T]he right of access to the courts is a fundamental right protected by the Constitution." *Delew*

25

*v. Wagner*,143 F.3d 1219, 1222 (9th Cir. 1998).

When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Molski.* at 1147-48.

### 7.      *Substantive Findings*.

When issuing a pre-filing order declaring a pro se litigant as vexatious, "it is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of the litigant's actions.'" *De Long*, 912 F.3d at 1148 (citing *Powell,* 851 F.2d at 431). To make this finding the court must look at "'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *De Long*, 912 F.3d at 1148 (citing Powell, 851 F.2d at 431). However, a mere showing of litigiousness is not enough. *Molski*, 500 F.3d at 1059. "The [litigant's] claims must not only be numerous, but also be patently without merit." *Id.* (*citing Moy v. U.S.*, 906 F.2d 467, 470 (9th Cir. 2007)). An alternative to finding frivolousness, is finding that the litigant's claims demonstrate a pattern of

26

harassment. *De Long*, 912 F.3d at 1148.

**B. Of the "Eleven Cases," None are Frivolous or Harassing.**

Judge Martinez Order identifies and has some words to say about each case. As will be shown, not one case is frivolous or harassing. Each case had a particular purpose within the strategy of Eugster in seeking the fair hearing of his rights which he has pursued with great perseverance.

### *1. The Standards Used by Judge Martinez.*

What Judge Martinez says:

> To evaluate whether a party's actions warrant such an order, courts in the Ninth Circuit often consider five factors: (1) the party's "history of litigation" and any duplicative or harassing suits; (2) whether the party has an objective good faith expectation of prevailing; (3) whether the party is represented by counsel; (4) whether the party has caused "needless expense" to others or posed an unnecessary burden on the courts; and (5) whether other sanctions would provide adequate protection. *Molski*, 500 F.3d at 1058. <u>Defendants walk through each of these factors</u>. See Dkt. #61 at 8-12. Emphasis added. Order 7, lines 2-9

What the WSBA says:

> To evaluate whether a party's actions warrant such an order, courts in the Ninth Circuit often consider five factors: (1) the party's "history of litigation" and any duplicative or harassing suits; (2) whether the party has an objective good faith expectation of prevailing; (3) whether the party is represented by counsel; (4) whether the party has

caused "needless expense" to others or posed an unnecessary burden on the courts; and (5) whether other sanctions would provide adequate protection. *Molski*, 500 F.3d at 1058. Here, each of these factors weighs in favor of restricting Eugster's filings as requested. Motion 7, lines 3 - 10

Here is what was *Molski* actually said:

("The Second Circuit, by contrast, has instructed district courts, in determining whether to enter a pre-filing order, to look at five factors: (1)     the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Safir*, 792 F.2d at 24. These five factors are substantive in that they all address whether a party is a vexatious litigant and whether a pre-filing order will stop the vexatious litigation or if other sanctions are adequate.

### 2.     *What Judge Martinez Say about the Eleven Cases and What the Bar and "Background"Section Says*

The Background section appears below with the cases identified.  The

paragraphs are numbered.  As to each paragraph, there will be three parts: What

Judge Martinez says, What the WSBA says, and Comment by Eugster.

Paragraph 1.

**WSBA:** Ever since Eugster was sanctioned for professional misconduct in 2009, see *In re Disciplinary Proceeding Against Eugster*, 166 Wash. 2d 293, 298 (2009) ("Eugster I"), he has pursued a pattern of repetitive and burdensome litigation against Washington's bar system in federal and state courts across the State. He has filed eleven cases to date, including ten since 2015. In each case, on his own behalf or on behalf of other lawyers, Eugster has sued some combination of the WSBA, its officials, the Washington Supreme Court, and its Justices. The pertinent filings and orders from each of Eugster's prior relevant cases are attached in the Appendix ("App.") accompanying the Declaration of Taki V. Flevaris in Support of this Motion ("Flevaris Decl.") and are summarized below.

**Judge Martinez:** Mr. Eugster's legal battles against the Washington State Bar Association apparently began in 2009 after he was sanctioned for professional misconduct. See *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 298 (2009) ("Eugster I").

**Eugster:** Judge Martinez and WSBA lawyers would like to think cases began with Eugster was disciplined.  This is not true:  Eugster II was a response to the WSBA's intention to commence discipline proceeding against Eugster for something he supposedly did prior to the discipline action against him.  Eugster III was commenced because Eugster sought to have *Lathrop v. Donohue* overruled.

1. **Eugster v. Wash. State Bar Ass'n, No. CV 09-357-SMM (E.D. Wash. 2010) ("Eugster II").**

Paragraph 2.

**WSBA:** In late 2009, Eugster filed suit in U.S. District Court for the Eastern District of Washington ("Eastern District"), alleging Washington's lawyer discipline system violates due process. Dkt. #62-1, Appendix at 1-31 ("Eugster II"). The court dismissed the case because Eugster lacked standing, but also because his claims were unripe. *Id*. at 68-75. He appealed and the Ninth Circuit affirmed. Id. at 78-79.

**Judge Martinez:** In December of that year, Mr. Eugster filed suit in U.S. District Court for the Eastern District of Washington ("Eastern District"), alleging Washington's lawyer discipline system violates due process. Dkt. #62-1, Appendix at 1-31 ("Eugster II").1 The court dismissed the case because Mr. Eugster lacked standing, but also because his claims were unripe. *Id.* at 68-75. He appealed and the Ninth Circuit affirmed. *Id.* at 78-79.

**Eugster:** Eugster II, in this case, Eugster successfully prevented the WSBA from commencing another disciplinary action against Eugster. During the time of Eugster's suspension from the practice of law, WSBA disciplinary counsel, the same counsel who prosecuted the disciplinary action against Eugster, had commenced an investigation of a grievance which he had been sitting on for several years. Under the circumstances, because there was an imminent threat of disciplinary action, Eugster under the Younger abstention doctrine and standing to bring an action in federal court. Eugster II was commenced in December 2009. ER 2. Not long after, disciplinary counsel dismissed the grievance. Of course, upon the dismissal, the standing which Eugster had was gone. The case became moot. Eugster, however, saw that the dismissal included a rather harsh admonition. Disciplinary counsel did not have authority to put an admonition in the dismissal. Eugster, under the case of Miller versus WSBA, believed that he had the standing to seek an opportunity to deal with the admonition. Eugster filed an amended complaint. ER 747. The complaint was dismissed. The court did not consider the argument that Eugster had standing because of the wrongful admonition. Eugster was told he could keep the skate case going if he said he was going to violate in the future a rule of professional conduct or a provision of the ELC. Eugster refused to do so because in his opinion that would be unethical. The case was thus dismissed, and on appeal, the Ninth Circuit appellate panel dismissed the case on the basis of lack of standing.

2. **Eugster v. Wash. State Bar Ass'n, No. C15- 0375-JLR (W.D. Wash. 2015) ("Eugster III").**

Paragraph 3.

**WSBA:** In early 2015, Eugster filed suit in this Court, challenging bar membership, license fees, and the use of such fees. *Id.* at 80-97 ("Eugster III"). As this Court found, Eugster altered and "grossly misstate[d]" language from a U.S. Supreme Court opinion to support his theory of the case. *Id.* at 130. This Court explained that the Supreme Court and Ninth Circuit have upheld mandatory bar membership and fees several times, "and in no uncertain terms." *Id.* at 130-34. The Court dismissed Eugster's claims with prejudice; the Ninth Circuit affirmed. *Id.* at 139-42.

**Judge Martinez:** In early 2015, Mr. Eugster filed suit here in the Western District, challenging bar membership, license fees, and the use of such fees. *Id.* at 80-97 ("Eugster III"). This Court found that Mr. Eugster altered and "grossly misstate[d]" language from a U.S. Supreme Court opinion to support his theory of the case. *Id.* at 130. This Court explained that the Supreme Court and Ninth Circuit have upheld mandatory bar membership and fees several times, "and in no uncertain terms." *Id.* at 130-34. The Court dismissed Mr. Eugster's claims with prejudice; the Ninth Circuit affirmed. *Id.* at 139-42.

**Eugster:**  Eugster III  Was an effort to have the District Court in Seattle overrule Lathrop versus Donahue. Eugster thought it was appropriate to attempt to overrule the case in light of the fact that the first amendment jurisprudence concerning invasions of persons fundamental rights under the Constitution had changed dramatically since 1961. Further there was the case of Quinn versus Harris wherein Judge Alito explained what happened in the case and how it had been based on a false legal premise. There was also a case dealing with the issue of whether or not the strict scrutiny approach should actually be applied to present situations. Then I think was the Kingstead case.

In any event the bar was not pleased Eugster had brought the case. It ramped up a grievance against Eugster which had long been un-pursued. Eugster had complied with every request bar counsel made. He replied properly and in a very detailed fashion each time. Bar counsel seemed pleased with what he was getting Eugster heard nothing for weeks and weeks. On December 25, 2014 Eugster sent the last grouping of material. This group was more extensive than before. Nothing happened weeks went by months went by and then? The Bar Association

reawakened the grievance and began investigation. The investigation produced threats against Eugster that grievances would be asked to be order to hearing. It was then that Eugster filed Eugster for in Superior Court Spokane County. This was a test case in a way. The Bar Association had as far as Eugster could remember conveyed the thought that the Superior Court had no jurisdiction regarding what the Bar Association and the Supreme Court were doing in the discipline of attorneys area. It eventually turned out that Eugster was right, the Superior Court did have jurisdiction.

After the Bar Association actually sought to have the grievance committee order in the grievance to hearing Eugster filed an action in federal court. This is Eugster V.

### 3. Eugster v. Wash. State Bar Ass'n, 198 Wn. App. 758 (2017) ("Eugster IV").

**Eugster:**  Eugster IV Eugster IV was commenced in Spokane County Superior Court in late 2016. The action was a civil rights action primarily under 40 2U. S. C. 1983. It was commenced in Superior Court for two reasons: first, there was a question under the Younger abstention doctrine whether Eugster would be able to commence an action in federal court. Rather than risk this problem, and because Eugster was certain that the Superior Court of the state of Washington and had jurisdiction over a civil rights action. It had long been held by the Washington state Bar Association, its former general counsel, Robert Weldon, that the Supreme Court of the state of Washington had exclusive jurisdiction over WSBA disciplinary matters. Eugster was certain that this was wrong in light of the original jurisdiction delegated to Superior Court's in Washington under the Washington state constitution.

On a motion to dismiss by the WSBA Superior Court Judge Sam Cozza dismissed the case for lack of jurisdiction. That is, Judge Cozza agreed with WSBA counsel that disciplinary jurisdiction was completely in the hands of the Washington state Supreme Court.

The case was appealed to the Court of Appeals Division III. The Court of Appeals ruled that the Superior Court did indeed have jurisdiction over the action. At that

point, the Court of Appeals saying that it had original jurisdiction proceeded to determine that Eugster's claim was barred by residue toccata or claim preclusion. The Court of Appeals did not have such jurisdiction, in fact, the Washington Constitution article 4 section 30 pointed out that the Court of Appeals had such jurisdiction as the legislature determined. The legislature under RCW 4.48.040 said that the Court of Appeals only had appellate jurisdiction. Eugster sought review by the Washington Supreme Court, but his petition was denied.

Eugster IV continues to be a viable action. It is viable because the court did not have jurisdiction to go beyond its appellate jurisdiction as provided by Constitution and law. At first, Eugster determined that under the law the Trial Ct. in Eugster IV hand on remand the right to protect its jurisdiction. The Washington Atty. Gen. disagreed with that point of view. Rather than fight it, Eugster determined that the most efficient manner in which to deal with the problem was to commence a declaratory judgment action in Superior Court in Spokane County asking the court to decide or declare whether the Court of Appeals had jurisdiction to render the decision it rendered, that is to proceed after the reversal of the trial court decision, to undertake original jurisdiction and decide whether Eugster was precluded from pursuing the primary purpose of the case which was whether or not the court had jurisdiction to decide the residue toccata, issue preclusion, ideas of the appellate panel on the case. This case is ongoing, and Eugster intends to pursue it.

### 4. Eugster v. Littlewood, No. 2:15-CV-0352-TOR (E.D. Wash. 2016) ("Eugster V").

Paragraph 4.

**WSBA:**  In late 2015, soon after Eugster III was dismissed, Mr. Eugster filed complaints in Spokane County Superior Court and in federal court in the Eastern District, again claiming that Washington's lawyer discipline system violates due process requirements. See *Id.* at 143-77 ("Eugster IV"), 289-325 ("Eugster V"). These cases were also dismissed with prejudice, on res judicata grounds, in part because Mr. Eugster could have raised such objections in his prior disciplinary proceedings. *Id.* at 225-28; 367-81. Division III of the Court of Appeals affirmed,

and the Washington Supreme Court denied Mr. Eugster's petition for review in Eugster IV. *Id.* at 230-276. Eugster V remains pending before the Ninth Circuit, *Id.* at 382-383; Dkt. #62 ("Flevaris Decl.") at 21.

**Judge Martinez:** In late 2015, soon after Eugster III was dismissed, Eugster filed twin complaints in Spokane County Superior Court and in the Eastern District, again claiming that Washington's lawyer discipline system violates due process requirements. See *Id.* at 143-77 ("Eugster IV"), 289-325 ("Eugster V"). These cases were also dismissed with prejudice, on res judicata grounds, in part because Eugster could have raised such objections in his prior disciplinary proceedings. *Id.* at 225-28; 367-81. Division III of the Court of Appeals affirmed, and the Washington Supreme Court denied Eugster's petition for review in Eugster IV, *Id.* at 230-276, whereas Eugster V remains pending before the Ninth Circuit, *Id.* at 382-383; Flevaris Decl. 21.

**Eugster:**

**5.     Eugster v. Wash. State Bar Ass'n, No. 2:16-cv-01765 (W.D. Wash. Nov. 15, 2016) ("Eugster VI").**

Paragraph 5

**WSBA:** In late 2016, Eugster filed suit again in this Court, again challenging bar membership, fees, and discipline procedures. *Id.* at 400-24 ("Eugster VI"). Eugster tried to distinguish the suit by arguing the WSBA's most recent bylaw amendments designating limited license practitioners as bar members transformed the WSBA into a new entity that lacked authority. *Id.* at 407-416, 421-23. Eugster voluntarily dismissed that suit, id. at 425-26, Caruso v. Wash. State Bar Ass'n, No. C17-003 RSM, 2017 WL 1957077 (W.D. Wash. Jan. 3, 2017) ("Caruso").

**6.     Caruso v. Wash. State Bar Ass'n, No. C17-003 RSM, 2017 WL 1957077 (W.D. Wash. Jan. 3, 2017) ("Caruso").**

. . . . then immediately re-filed the same claims in this case, on behalf of two other

previously disciplined lawyers, initially as a class action but eventually abandoning the class claims. *Id.* at 427-76; 477-516. This Court rejected Eugster's arguments as frivolous, including his unsupported assertion that the WSBA had lost its authority. *Id.* at 517-25.

**Judge Martinez**: In late 2016, Mr. Eugster filed suit again in this Court, again challenging bar membership, fees, and discipline procedures. *Id.* at 400-24 ("Eugster VI"). Mr. Eugster tried to distinguish the suit by arguing the WSBA's most recent bylaw amendments designating limited license practitioners as bar members transformed the WSBA into a new entity that lacked authority. *Id.* at 407-416, 421-23. Mr. Eugster voluntarily dismissed that suit, *Id.* at 425-26, then immediately re-filed the same claims in the instant matter, on behalf of two other previously disciplined lawyers, initially as a class action but eventually abandoning the class claims. *Id.* at 427-76; 477-516. This Court rejected Mr. Eugster's arguments and dismissed his claims with prejudice. *Id.* at 517-25.

**Eugster:**  Eugster VI seeks

## 7.    Eugster v. Supreme Court of Wash., No. 17-2-00228-34 (Thurston Cnty. Super. Ct. 2017) ("Eugster VII").

Paragraph 6

**WSBA:** In early 2017, around the same time he filed this case, Eugster also filed suit in Thurston County Superior Court, again challenging WSBA license fees. *Id.* at 668-692 ("Eugster VII"). Eugster attempted to distinguish this challenge by arguing that license fees constitute an improper "tax." *Id.* at 704. Eugster asked that the WSBA be placed into a receivership and for an accounting of any WSBA expenditures. *Id.* at 706-07. After Defendants moved to dismiss, Eugster voluntarily dismissed the case. Flevaris Decl. 39; App. at 723-24.

**Judge Martinez**: In early 2017, around the same time he filed this case, Mr. Eugster also filed suit in Thurston County Superior Court, again challenging WSBA license fees. *Id.* at 668-692 ("Eugster VII"). Mr. Eugster argued that

license fees constitute an improper "tax." *Id.* at 704. Eugster asked that the WSBA be placed into a receivership and for an accounting of any WSBA expenditures. *Id.* at 706-07. After Defendants moved to dismiss, Mr. Eugster voluntarily dismissed the case. Flevaris Decl. 39; Appendix at 723-24.

Paragraph 7

**WSBA:** In the midst of this second phase of lawsuits, the WSBA asked this Court to impose monetary sanctions against Eugster, to deter him from his escalating pattern of meritless litigation. This Court agreed, finding Eugster had filed a "legally and factually baseless" suit after being "on notice of the flaws" in his claims, especially given his prior suits. App. at 532. This Court ordered Eugster to pay $28,385 to the WSBA for legal expenses incurred defending against the suit. *Id.* at 540. On appeal, Eugster argued the WSBA had defrauded this Court and that this Court was unduly biased. *Id.* at 570-88. The Ninth Circuit affirmed, rejecting those arguments as meritless and "unsupported by the record." *Id.* at 615-18, 620. Eugster moved for rehearing en banc, and that request is pending. *Id.* at 626-40, 645-665; Flevaris Decl. 33-34.

**Judge Martinez**: At one point the WSBA asked this Court to impose monetary sanctions against Mr. Eugster, to deter him from his escalating pattern of meritless litigation. This Court agreed, finding Mr. Eugster had filed a "legally and factually baseless" suit after being "on notice of the flaws" in his claims, especially given his prior suits. Appendix at 532. This Court ordered  Eugster to pay $28,385 to the WSBA for legal expenses incurred defending against the suit. *Id.* at 540. On appeal, Mr. Eugster argued the WSBA had defrauded this Court and that this Court was unduly biased. Id. at 570-88. The Ninth Circuit affirmed, rejecting those arguments as merit less and "unsupported by the record." *Id.* at 615-18, 620. Mr. Eugster moved for rehearing en banc, and that request is pending. *Id.* at 626-40, 645-665; Flevaris Decl.  33-34.

**Eugster:** After reading what the judge said, one goes into shock.  Did he really say what he said.  Let us keep it simple, The judge does not think much of Eugster. Eugster does know why the judge would have nothing but a neutral regard fof Eugster.

Eugster VII is a good case, an important case.  Someone must bring it. Over the years the bar association has amassed about $12,000,000 of liquid or nearly liquid assets.  Who owns that money.  The members of the state bar association as members of the association have right to those funds.  The attorney general should be acting on this.  This money could be used to finance a state wide state bar association free of the intrusions of the court.

**8.     Eugster v. Littlewood, No. CV-00392 (E.D. Wash. Nov. 25, 2017) ("Eugster VIII").**

Paragraph 8

**WSBA:**  Eugster did not heed the sanction this Court imposed on him. In late 2017, Eugster filed yet another lawsuit, this time in the Eastern District. *Id.* at 737-47 ("Eugster VIII"). As before, Eugster's complaint asserted constitutional claims against bar membership, license fees, and discipline procedures, and argued that the WSBA lacks regulatory authority. *Id.* at 744-47. In response, the WSBA noted to Eugster that his complaint was duplicative and frivolous, as before. *Id.* at 727. The WSBA also notified Eugster that it would seek a vexatious litigant order against him if he refused to withdraw the case. See *Id.*

**Judge Martinez**: Mr. Eugster did not heed the sanction this Court imposed on him. In late 2017, Mr. Eugster filed another lawsuit in the Eastern District. Appendix at 737-47 ("Eugster VIII"). As before, Mr. Eugster's complaint asserted constitutional claims against bar membership, license fees, and discipline procedures, and argued that the WSBA lacks regulatory authority. *Id.* at 744-47. In response, the WSBA notified Mr. Eugster that his complaint was duplicative and frivolous, as before. *Id.* at 727. The WSBA also notified Mr. Eugster that it would seek a vexatious litigant order against him if he refused to withdraw the case. See *Id.*

Paragraph 8 continued

**WSBA:** Mr. Eugster did not withdraw. Instead, he requested that the assigned judge recuse himself based on the fact he had already dismissed one of Mr. Eugster's prior suits. See id. at 823-29. The court denied that request and the WSBA moved to dismiss. *Id.* at 830-34; 748-70. In response, Mr. Eugster filed an amended complaint with the same claims; also reasserting his challenge against the use of fees; and arguing as a new theory in support of those claims that the Washington Supreme Court and WSBA constitute a monopoly over the practice of law. *Id.* at 771-95. The WSBA again moved to dismiss, explaining that Mr. Eugster's claims were precluded by his past suits and meritless as a matter of law in any event. See *Id.* at 796-822. That motion remains pending. Flevaris Decl. at 46.

**Judge Martinez:** Eugster did not withdraw. Instead, he requested that the assigned judge recuse himself based on the mere fact he had already dismissed one of Eugster's prior suits. See id. at 823-29. The court denied that request and the WSBA then moved to dismiss. *Id.* at 830-34; 748-70. In response, Eugster filed an amended complaint with the same claims; also reasserting his challenge against the use of fees; and arguing as a new theory in support of those claims that the Washington Supreme Court and WSBA constitute a monopoly over the practice of law. *Id.* at 771-95. The WSBA again moved to dismiss, explaining that Eugster's claims were precluded by his past suits and meritless as a matter of law in any event. See *Id.* at 796-822. That motion remains pending. Flevaris Decl. 46.

**Eugster: Eugster**:  Eugster's Opening Brief in the case can be found at Appendix 164.

9. **Eugster v. Wash. State Bar Ass'n, No. 18-2-00542-1 (Spok. Cnty. Super. Ct. 2018) ("Eugster IX")**

Paragraph 9

**WSBA:** On February 12, 2018, Mr. Eugster filed another lawsuit in Spokane County, asserting defamation, invasion of privacy, and abuse of process claims against both the WSBA and its attorneys as named defendants, based on the

WSBA's briefing in this case. *Id.* at 835-48 ("Eugster IX"). That action remains pending. Flevaris Decl. at 49.

**Judge Martinez:** On February 12, 2018, Eugster filed another lawsuit in Spokane County, asserting defamation, invasion of privacy, and abuse of process claims against both the WSBA and its attorneys as named defendants, based on the WSBA's briefing in this case. *Id.* at 835-48 ("Eugster IX"). That action remains pending. Flevaris Decl. 49.

Paragraph 10

**WSBA:** The next day, Mr. Eugster filed a "Complaint on Remand" before the superior court in Eugster IV, purporting to name the Washington Court of Appeals and the individual judges who decided the appeal in that case as defendants. Appendix at 227-85. Mr. Eugster argued that the judges "made the case their own" and that the decision in that case cannot stand because the discipline system does not afford due process. *Id.* at 281-82. The superior court summarily denied Mr. Eugster's request because the matter already had been "dismissed with prejudice." *Id.* at 286.

**Judge Martinez**: The next day, Eugster filed a "Complaint on Remand" before the superior court in Eugster IV, purporting to name the Washington Court of Appeals and the individual judges who decided the appeal in that case as defendants. *Id.* at 227-85. Eugster argued that the judges "made the case their own" and that the decision in that case cannot stand because the discipline system does not afford due process. *Id.* at 281-82. The superior court summarily denied Eugster's request because the matter already had been "dismissed with prejudice." *Id.* at 286.

Eugster:  Eugster thought it proper that the original trial court was the court in which  effort should be made to correct what the Court of Appeals had done . Counsel for the Atty. Gen.'s office disagreed with with Eugster. Thus the only thing to be done that was to seek a determination by the Superior Court exercising its original jurisdiction to correct a void judgment.

**10. Eugster v. Littlewood, No. 18-2-01360-34 (Thurston Cnty. Super. Ct. 2018) ("Eugster X").**

Paragraph 11

**WSBA:** On March 6, 2018, Mr. Eugster filed in Thurston County, again challenging bar membership, fees, and the discipline system, and asserting that the Washington Supreme Court and WSBA constitute a monopoly. *Id.* at 849-61 ("Eugster X"). That case is pending. Flevaris Decl. 51.

**Judge Martinez**: On March 6, 2018, Eugster filed in Thurston County, again challenging bar membership, fees, and the discipline system, and asserting that the Washington Supreme Court and WSBA constitute a monopoly. *Id.* at 849-61 ("Eugster X"). That case is pending. Flevaris Decl. 51.

Eugster:  Eugster this case is similar to the case before the court which Eugster last brought in District Court. There were two reasons and more why Eugster filed in Thurston County. The first reason was that or is that the Supreme Court itself was not a party to the action. The justices were but Eugster felt uncertain that there would be a lasting effect unless the Supreme Court itself was a party. The court could not be a party in federal court. It certainly could be a party in state court. Nevertheless the state court proceeding is now subject to a stay most likely depending on an outcome in the present case.

**11. Eugster v. Wash. State Bar Ass'n, No. 18-2-01561-2 (Spok. Cnty. Super. Ct. 2018) ("Eugster XI").**

Paragraph 12

**WSBA**: Finally, in an appendix Eugster recently filed, he included a copy of a complaint and summons for a new case apparently filed in Spokane County on April 10, 2018. Flevaris Decl. at 52; Appendix at 874-83 ("Eugster XI"). This complaint names the WSBA, the Washington Court of Appeals Division III, and the three judges who ruled against him in Eugster IV as defendants, challenging

the decision in that case. Appendix at 875-78.

**Judge Martinez**:  Finally, in an appendix Mr. Eugster recently filed, he included a copy of a complaint and summons for a new case apparently filed in Spokane County on April 10, 2018. Flevaris Decl. at 52; Appendix at 874-83 ("Eugster XI"). This complaint names the WSBA, the Washington Court of Appeals Division III, and the three judges who ruled against him in Eugster IV as defendants, challenging the decision in that case. Appendix at 875-78.

**Eugster:**  Eugster XI is a followup on remand in Eugster IV seeks to establish that the Court of Appeals exceeded its appellate jurisdiction.  If the court agrees, the decision will be corrected. The res judicata decision will be deleted. Once corrected, the case will be remanded to the trial court.  When it is, the trial will exercise its original jurisdiction of the case.  The case is not frivolous, and Eugster has a good chance of prevailing under the facts and the law.


## III.   EUGSTER'S CONSTITUTIONAL RIGHTS

There can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire. Such a regulation may impair the ability of the original members to express only those views that brought them together. Freedom of association therefore plainly presupposes a freedom not to associate. See *Abood v. Detroit Board of Education, supra*, at 234-235. The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less

restrictive of associational freedoms. *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

## IV.    CONCLUSION

In conclusion Eugster asks the court to overrule the prefiling order. It is not right that Judge Martinez sign the order and expects to be the judge who is going to determine whether Eugster's pleadings can be filed.  As Eugster mentioned earlier he has still, a right to seek a decision that a fraud on the court was committed.  He has that right under Rule 60(b) and under Rule 60(d)(3).

## V.    STATEMENT OF RELATED CASES

18-35421 Stephen Eugster v. Washington State Bar Association, et al.

Related 10/16/2018

16-35542 Stephen Eugster v. Paula Littlewood, et al.

Related 05/17/2018 05/29/2018

18-35557 Robert Caruso v. Washington State Bar Association, et al.

Related 07/03/2018

## VI.    REQUEST FOR ORAL ARGUMENT

Under Local Rule 34(a), Appellant respectfully submits that oral argument should be heard in this appeal.

October 12, 2018.

<div style="margin-left:45%">

Respectfully submitted,

/s/ Stephen Kerr Eugster
EUGSTER LAW OFFICE PSC
2418 West Pacific Avenue
Spokane, Washington 99201
(509) 990-9115
eugster@eugsterlaw.com

</div>

# CERTIFICATE OF COMPLIANCE, RULE 32(A)(7)

This brief complies with the word-length limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(I). This brief contains less than 11,929 words, excluding the portions outlined in Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using WordPerfect and 14-point Times New Roman.

October 12, 2018.

Respectfully submitted,

/s/ Stephen Kerr Eugster
EUGSTER LAW OFFICE PSC
2418 West Pacific Avenue
Spokane, Washington 99201
(509) 990-9115
eugster@eugsterlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, October 12, 2018, the foregoing was electronically filed and therefore served electronically via the court's ECF/CM system on all counsel of record.

I further certify that paper copies of the brief will be delivered timely to the Court in October, 2018.

October 12, 2018.

/s/ Stephen Kerr Eugster
Stephen Kerr Eugster
EUGSTER LAW OFFICE PSC
2418 West Pacific Avenue
Spokane, Washington 99201
eugster@eugsterlaw.com